## Self Drive It Corporation Case.

Argued April 23, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*J. Webster Jones,* for appellants.

*Nathan I. Miller,* with him *Miller, Adelman & Lavine,* for liquidating receiver, appellee.

*David N. Bressler* and *Phillip B. Robinson,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, September 30, 1957:

This appeal was taken from an order of the Court of Common Pleas No. 1 of Philadelphia County, dated December 19, 1956, dismissing appellant's motion to quash, set aside and dismiss all proceedings in the matter in controversy up to the date of the motion.

Self Drive It Corporation[1] is a "closed" Pennsylvania corporation the capital stock of which is owned entirely by two married couples who also serve as its only four directors. Appellants, M. Alexander Forman and Betty Forman own—respectively—49% and 1% of the capital stock; appellees, Richard S. Robinson and Florence H. Robinson, own—in the same proportion—the other half of the corporate stock. The control of the corporation is thus divided evenly between the two families.

On October 26, 1956, appellee Richard S. Robinson petitioned the Court of Common Pleas No. 1 of Philadelphia County under §1107 (A) (4) of the Pennsylvania Business Corporation Law of 1933, as amended,[2] for the appointment of a receiver "to liquidate the assets and wind up the business of the corporation in the nature of a dissolution". The petition contained an allegation, couched in the language of §1107 (A) (4) of the statute, supra, that the directors were deadlocked in the management of the corporate affairs, that the stockholders were unable to break this deadlock, that irreparable damage and injury were being suffered by

---

[1] The corporation was formed on August 19, 1947, and its business consists of the leasing of automobiles and trucks. .

[2] Act of May 5, 1933, P. L. 364, Art. XI, §1107 (A) (4), 15 PS §2852-1107 (A) (4).

the corporation, and such damage and injury would continue and be of such a character and nature as to destroy the stockholders' equity and be injurious to the creditors.

On the same day the court below, pursuant to §1108(a) of the Business Corporation Law, supra, appointed one Irwin Apfel and one David Cohen as *temporary* co-receivers of the corporation, specifically stating that the court would fix a date for the full hearing on the petition and facts at which time it would determine whether, and for what purposes, a *permanent* receiver should be appointed.

The temporary co-receivers were ordered to file an inventory and appraisement of the assets and property of the corporation and to make a report to the court thereon within 30 days. Pursuant to this order, on November 15, 1956, an exhaustive and comprehensive report was filed in which the temporary co-receivers reviewed the nature, history and problems of the business and concluded with the recommendation, buttressed with full reasons therefor, that a liquidating receiver should be appointed whose primary duty should be to liquidate the corporate assets.

On the same day the court below ordered that a hearing be held for the purpose of determining whether or not a *"liquidating"* receiver should be appointed. At this hearing, on November 21, 1956, appellee Robinson introduced testimony: (1) that neither the Robinsons nor the Formans were able to control the corporation because each family owned 50% of the stock; (2) that there had been a serious dispute existent for several months between Richard S. Robinson and M. Alexander Forman which had arisen because of Mr. Forman's insistence that the corporation's fleet of motor vehicles should be reduced; (3) that as a result of this dispute Mr. Forman, who served as secretary-

treasurer of the corporation, on one occasion had refused to sign the payroll checks of the corporation and that this unexplained refusal had resulted in the employees being unpaid at the proper time, thereby revealing to them the dissension existent in the management and affecting their morale; (4) that on another occasion Mr. Forman had refused to sign a check for approximately $29,000 (payable to the bank on which the corporation depended for its financing) on the date when the payment became due and that he persisted in this refusal until Mr. Robinson was forced to reveal to the bank the dispute within the corporation's management and the inability of the stockholders (who comprise the entire management) to resolve this dispute.

At the hearing appellants' counsel cross-examined appellee Robinson and his witnesses but failed to offer any evidence at all to rebut their testimony. At appellants' request and over appellees' objection the hearing was continued until November 28, 1956 so that appellants could further prepare and review their case.

When the continued hearing was resumed the following colloquy—the importance of which is self-evident—occurred: "The Court: This is a hearing, a continued hearing, is it not, on a petition to have a permanent receiver appointed? Mr. Miller: (counsel for the temporary receivers) Yes, Sir. Mr. Jones: (counsel for the appellants) That is right. At the last hearing I made representation to the Court that I desired to file certain exceptions. Events after that—since then we have worked two business days, Friday and Monday—*Events after that had led me and my client to agree and say to the Court that we should do nothing further but agree to the Court appointing a permanent receiver and move on from that point,* your Honor. (Emphasis supplied) Mr. Miller: If it pleases

your Honor, although the term 'permanent receiver' is used, we speak of a 'liquidating receiver' within the purview of the Business Corporation Act of 1933, sections 1107 and 1108. The Court: Oh, I see. That is the correct term, is it, 'liquidating receiver', rather than 'permanent receiver'? Mr. Miller: That is right. . . .".

It must be noted, parenthetically, that nowhere during the course of this discussion did appellants offer any objection whatsoever to what was being said or being done. The record could not possibly be any more clear on this point. Appellants consented to the appointment of what their counsel incorrectly described as a "permanent" receiver. Appellees immediately corrected this mistake, asserting that the correct term was "liquidating receiver" and the Court took immediate cognizance of the correction. *Appellants did not object or, in fact, say anything at all which would have the effect of qualifying their consent.* It can only be assumed, from the face of the record, that appellants consented to the appointment of a liquidating receiver.

This conclusion becomes even more inescapable in view of what was said shortly thereafter, at the conclusion of the hearing: "The Court: I will appoint Mr. Apfel as liquidating receiver. As you know, the Court may appoint a receiver on its own motion and eliminate one suggested by the original petitioner. This is no reflection whatsoever on Mr. Cohen, for whom I have high regard. It is just that at this point there is no necessity for two receivers and we want to keep the expense down. Mr. Miller: I appreciate that. The Court: I see Mr. Cohen is in court and I know that he will understand exactly what I am stating, that this is in no sense any criticism of him or any reflection on him. Mr. Irwin Apfel is appointed sole liquidating receiver. The bond heretofore required may be

continued until further order of the Court. There is no use increasing the amount of the bond unless the necessities of the situation require it. Mr. Miller: Very good, sir. The Court: Whatever is to be done is to be done with the knowledge of all the parties concerned and nothing will be approved by the Court without ample notice and hearing. I hope that the parties will find a way of getting the most they can from this very profitable business."

Again, appellants neither objected nor gave any indication whatever that they intended to qualify their consent to the appointment of a receiver. It should be noted, however, that they did not even attempt to present the case which they had stated, on November 21, 1956, that they needed additional time to prepare. The conclusion is unavoidable in view of this record that appellants' claim they consented only to the appointment of a permanent, and not a liquidating receiver is untenable.

The order of November 15, 1956 fixing the hearing could not have been any more specific as to the purpose of that hearing ("... to determine whether a *liquidating* receiver should be appointed in the above matter") (Emphasis supplied), and again, appellants stood mute while a complete explanation and distinction was drawn between "liquidating" and "permanent" receivers in open court. Under these circumstances we have no alternative but to hold that at the continued hearing which occurred on November 28, 1956, appellants consented to the appointment of a liquidating receiver for the corporation.

Thereafter, on December 4, 1956 the liquidating receiver petitioned for leave to sell the corporate assets. On December 5, 1956 the court below ordered the liquidating receiver to sell the corporate assets in open court to the highest bidder on December 19, 1956. On

December 7, 1956 the appellants filed a motion to quash, dismiss and set aside the proceedings which motion the court below denied by a written opinion and order dated December 19, 1956. Appellants thereupon took this appeal.

The sale ordered by the Court was continued twice *at appellants' request,* but finally, on January 8, 1957, the assets of the corporation were sold to the highest bidder.

On this appeal appellants argue: (1) that there was insufficient evidence to support the averments of the petition that there was a deadlock in the management and that the corporation was suffering irreparable injury; (2) that the court below appointed a receiver without an opportunity being afforded to answer the petition before the receiver took over, that the Court never made findings of fact or law as such, and that the entire proceedings lacked due process and are consequently void; (3) that the court below lost all further jurisdiction when the appeal was taken and certiorari lodged in that court.

We deem it wholly unnecessary to consider the merits of the appellants' first two assumptions in view of the fact that they, as has been explained, expressly consented to the appointment of the liquidating receiver. Having once given such consent in open court, thereby foreclosing the need for any further testimony to show the deadlock and irreparable injury, appellants will not now be heard to deny the necessity for the receiver's appointment. Nor can appellants be heard to assert that they were denied due process of law when, in a hearing held for the express purpose of affording due process, they consented to the appointment of the receiver and thus, impliedly if not expressly, admitted the *necessity for* such an appointment.

There have been few cases decided under the provisions of the Pennsylvania Business Corporation Law of 1933, supra, here in question. However, in a situation such as the instant case, the express terms of the statute make little difference. The appellants, by their consent and acquiescence to the appointment of the receiver, induced the court below to take the action of which they now complain and should be foreclosed from complaining about the order of the court. Cf: *Sherwood's Estate*, 206 Pa. 465, 56 A. 20; *Bergman v. Straus*, 264 Pa. 439, 107 A. 810; *Gough v. Halperin*, 306 Pa. 230, 159 A. 447; *Thomas v. Hartt*, 136 Pa. Superior Ct. 84, 7 A. 2d 30.

Appellants argue that by taking an appeal to this Court and causing a certiorari to be issued to the court below they effected what amounts to a supersedeas and removed all jurisdiction from the court below in the matter in litigation pending determination of the appeal.

It would be well to emphasize at this point that appellants never were denied a supersedeas—throughout the entire course of the proceedings subsequent to the filing of their appeal they never requested one. In fact, the record clearly shows that between the filing of the appeal, on December 19, 1956, and the sale of the assets of the corporation, on January 8, 1957, appellants took an active part in all the proceedings in the court below to the extent of requesting and receiving two continuances and actually bidding at the sale. Furthermore, during the course of the proceedings they were specifically advised by the court below that an appeal did not ipso facto act as a supersedeas.

Appellants rely, for authority in support of their position, upon *Harwood v. Bruhn*, 313 Pa. 337, 170 A. 144. In that case, at page 341, this court quoted as follows from *Gilbert v. Lebanon Valley Street Railway*

*Company,* 303 Pa. 213, 218, 154 A. 302: "At common law a court of first instance is without jurisdiction to proceed with a cause after the record thereof has been removed to an appellate court. This rule still applies in the absence of a statute providing otherwise."

As pointed out by the lower court, the facts of the *Harwood* case are very different from those involved in the instant appeal. The appeal in that case was taken from the lower court's order striking off plaintiff's judgment against defendant. It is obvious that no bond need be filed in order to effect a supersedeas in such a situation because there is no party in need of the protection afforded by such a bond. The instant case, however, presents a situation in which the appellees, as stockholders entitled to share in the distribution of the proceeds from the sale of the corporate assets, could easily be injured by a change in the value of the corporation's assets during the period of delay necessitated by a stay of the proceedings.

The lower court correctly distinguished the *Harwood* case, as it applies to the instant situation, as follows: "If, on the contrary, in that case the lower court had refused to strike off the judgment, or refused to open the judgment, or refused to stay execution (in a situation where the judgment was properly entered but not yet collectible), and it was the defendant who would have appealed, then it is clear that under applicable statutes the mere taking of an appeal by him would not have stayed the plaintiff's proceedings in the court below, but the defendant would have had to obtain a supersedeas and file a bond. . . .

"In Shinn v. Stemler, 159 Pa. Superior Ct. 129, which was an appeal by defendant from the order of the court making the rule absolute for citation for the possession of real estate, the court said at p. 130: 'The question presented is whether that appeal nevertheless

acted as a supersedeas. It did not. The Act of May 19, 1897, P. L. 67, as amended, 12 P.S. Par. 1133 et seq., rules appeals on the question of supersedeas; and a supersedeas operates only in favor of those who ask for and have done those things necessary to obtain it. Drabant v. Cure, 280 Pa. 181, 187, 124 A. 340; Koenig v. Curran's Restaurant & Baking Co. et al., 121 Pa. Superior Ct. 201, 205, 207, 183 A. 451."

We fully approve the reasoning of the court below. In a situation such as this, where a stay could cause irreparable damage to the value of this corporation which has already suffered loss of borrowing power and business prestige because of this bitter dispute, we cannot hold that appellants were entitled to a supersedeas, especially since they neither requested one nor did those things necessary to obtain one: Act of May 19, 1897, P. L. 67, §12, as amended, 12 PS §1149. Especially is this true where, as here, the court ordered the sale prior to the appeal, the appellant had consented to the court's action and consequently had no basis for appeal and the appellants participated fully in all proceedings subsequent to the present appeal to the extent of securing continuances and bidding at the sale.

Appeal dismissed.